34 So.2d 412

**COBB v. FLOURNOY, Sheriff.**

No. 38022.

Feb. 16, 1948.

Wilson, Abramson & Maroun, of Shreveport, for plaintiff-appellant.

William F. Woods, Jr., Asst. Dist. Atty., of Shreveport, for defendant-appellee.

HAWTHORNE, Justice.

Plaintiff, R. W. Cobb, instituted this suit against J. H. Flournoy, sheriff of Caddo Parish, praying to be recognized as the owner, and as such entitled to immediate possession, of approximately 8000 punch boards, valued at $3000, which had been seized under and by virtue of a search warrant issued in a criminal proceeding styled "State of Louisiana v. D. J. Pursley," bearing No. 38574 on the docket of the First Judicial District Court of Caddo Parish, and praying further that, upon the failure of the sheriff to deliver this property to plaintiff within a delay to be fixed by the court, he have judgment against the sheriff in the sum of $3,000.

On September 7, 1944, W. T. Prudhomme, deputy sheriff of Caddo Parish, made an affidavit before the district judge, alleging that he had good reason to believe, and did believe, that certain gambling apparatus and implements were kept, used, and provided to be used in unlawful gambling at a house and building situated at 263 East Linden Street in the City of Shreveport, Caddo Parish, Louisiana. Pursuant to this affidavit, the district judge issued a search warrant, and the same day deputy sheriffs of the Shreveport sheriff's department, as disclosed by the returns on the search warrant, searched the premises of D. J. Pursley at 263 East Linden Street, Shreveport, Pursley being present, and there found certain gambling paraphernalia, including 6000 or 8000 punch boards, which were taken into their possession and removed to the parish courthouse.

Thereafter, on September 29, 1944, the district attorney filed a bill of information against D. J. Pursley, the individual on whose premises the punch boards had been seized under the search warrant, charging him with the crime of gambling as denounced by Article 90 of the Louisiana Criminal code, the offense being charged as having been committed on September 2, 1944. To this bill of information defendant Pursley filed a motion for a bill of particulars. In answer thereto, the State set forth that, on the date charged in the bill of information, the defendant therein did assist in conducting, as a business, a game, contest, *lottery,* and contrivance, commonly known as "punch boards", wherein persons risked the loss of something of value, namely, money, in order to realize a profit in money or merchandise; that such punch boards were operated thus: The boards were placed in various public places where members of the public would make payments in cash to the operators of the punch boards for the privilege of punching concealed numbers out of the boards, and, in the event any of certain numbers listed on the boards was punched, the operators of the boards would pay to the person

punching such winning number a certain sum in cash or merchandise in excess of the amount paid for the privilege of making the punch; the boards were so constructed that the owner and operator of them realized a profit far in excess of the amount paid out on them, and this profit was equally divided between the defendant (Pursley) and the parties in whose establishments the boards were placed for the public to play.

In due course the defendant Pursley was arraigned on said charge, he entered a plea of not guilty, and the case was fixed for trial October 20, 1944. On that date he appeared in open court, accompanied by his counsel, withdrew his former plea of not guilty, and entered a plea of guilty to the charge. Thereupon the court sentenced him to pay a fine of $500 and costs and, in default thereof, to serve six months in jail, and to serve one year in jail, this latter sentence being suspended. The State at that time offered and filed in evidence the search warrant together with the returns thereon, and the district judge ordered the destruction of these punch boards.

On November 15, 1944, plaintiff, R. W. Cobb, instituted the present suit against the sheriff. After answer had been filed by the defendant, the case was submitted on a stipulation of facts, which, in substance, have been set out hereinabove, with the exception that in the stipulation the sheriff admitted that plaintiff Cobb was the owner of the property seized under and by virtue of the search warrant.

The trial judge rejected plaintiff's demands and dismissed his suit at his costs, and plaintiff has appealed to this court.

The district court ordered the destruction of the punch boards under the authority of Article 48 of the Code of Criminal Procedure, which reads as follows: *"When any officer in the execution of a search warrant* shall find any property which has been the subject of theft, or *shall seize any of the other things for which a search warrant is allowed by the provisions of this title, all the property and things so seized shall be safely kept by the direction of the judge, so long as shall be necessary for the purpose of being produced or used as evidence on any trial; and as soon as may be afterwards* all such property which has been the subject of theft shall be restored to the owner thereof, and *all the other things seized by virtue of any such warrant, shall be destroyed under the direction of the judge."* (Italics ours.)

This article is found in the Code of Criminal Procedure under Title VIII, "Search Warrants", and the things for which a search warrant is allowed by the provisions of this title are found in Articles 42 and 43. Article 42 relates to stolen property, and the other things for which a search warrant is allowed are enumerated in Article 43, reading in part as follows:

"Any judge may also, upon like complaint made on oath, issue a search war-

rant when satisfied that there is reasonable cause, in the following cases, to wit:

\* \* \* \* \* \*

"(2) To search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided or procured for the purpose of drawing a lottery;

"(3) To search for and seize any gambling apparatus or implements used or kept and provided to be used in unlawful gambling, in any gambling house, or in any building, apartment or place resorted to for the purpose of unlawful gambling; \* \* \*."

Appellant contends that, since these punch boards, seized under a search warrant, were neither used nor needed in connection with any criminal proceeding or prosecution, there exists no authority in law for their confiscation and destruction; and, further, that the provisions of the Code of Criminal Procedure found under the title "Search Warrants", particularly those of Articles 43 and 48, have no application in this case, as there was no evidence before the court that these punch boards were "provided or procured for the purpose of drawing a lottery", as required by subsection (2) of the above quoted article, nor was there any evidence that the punch boards were used or kept in a gambling house, building, apartment, or place resorted to for the purpose of unlawful gambling, as required by subsection (3) of the article.

Our answer to this contention is that the fact that Mr. Pursley pleaded guilty to the crime of gambling, which is shown by the bill of particulars to be the business of operating a lottery, shows that these lottery materials must have been provided or procured for the purpose of drawing a lottery. If they were in fact not provided or procured for such a purpose, we think the burden was on the plaintiff in this civil suit to prove such a fact. He offered no proof whatsoever, nor did the parties make any stipulation to this effect.

No one can be heard to say that the State did not intend to use the 6000 or 8000 punch boards seized under the search warrant as evidence in the criminal case against Pursley in its efforts to secure his conviction in the event he had gone to trial on his plea of not guilty, for soon after their seizure the bill of information was filed against him charging him with the crime of gambling. It is true that they were not needed or used in the criminal prosecution, due simply to the fact that the defendant pleaded guilty to the charge. If, as appellant contends, the fact that the punch boards were not needed and used in evidence in the criminal prosecution justifies their return to their owner, then in any similar case a defendant in a criminal case by simply entering a plea of guilty could defeat the very purpose and intention of the law providing for the destruction of such gambling paraphernalia.

Article 48 of the Code of Criminal Procedure by its plain terms provides that, when any officer in the execution of a search warrant shall seize anything for which a

search warrant is *allowed,* such property shall be safely kept under the direction of the judge so long as shall be necessary for the purpose of being produced or used in evidence on any trial, and, as soon as may be thereafter, all such property which has been the subject of theft shall be returned to the owner, and all other things seized by virtue of such warrant shall be *destroyed* under the direction of the judge.

■ After the defendant Pursley in the criminal case pleaded guilty, it was not necessary to keep the punch boards safe for the purpose of producing or using them in evidence, and the trial judge correctly ordered their destruction. In fact, the article clearly makes it the mandatory duty of the judge to order such destruction provided the things seized are things for which a search warrant is *allowed.* Punch boards are things for which a search warrant is *allowed* under Article 43, which provides that a search warrant may be issued to search for and seize lottery tickets or materials for lotteries unlawfully made, provided, or procured for the purpose of drawing a lottery.

Our conclusion that the seizure of these punch boards and the order for their destruction were authorized by Articles 43 and 48 of the Code of Criminal Procedure answers all of appellant's contentions.

For the reasons assigned, the judgment appealed from is affirmed, plaintiff-appellant to pay all costs.

O'NIELL, C. J., absent.